[Civ. No. 1145. First Appellate District.—March 5, 1913.]

E. J. JOLLY, Respondent, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

CARRIER—CONTRACT FOR CARRIAGE OF FREIGHT—CONFLICT OF LAWS.—A contract of carriage, made in one state when delivery is to be had in another, is governed, so far as delivery is concerned, by the laws of the latter state.

ID.—LIABILITY AS INSURER OF GOODS.—A carrier is liable for goods as an insurer until it delivers them to the consignee in the manner required by law.

ID.—NOTICE TO CONSIGNEE OF ARRIVAL OF GOODS.—A postal card and telephonic message to the consignee of goods on the morning of their arrival, stating that the car would be delivered in the usual course of business, is at most a notice of intention to make delivery in the future, and should be followed by some actual notice of delivery within business hours.

ID.—DESTRUCTION OF GOODS AT DESTINATION—LIABILITY TO CONSIGNEE.— Where a railway company places a car on the siding next to the consignee's warehouse, after the warehouse is closed for the day, without notice to him and contrary to the custom to first receive instructions from consignees before placing cars, and a few hours thereafter goods in the car are destroyed by fire, the railway company is liable to the consignee.

ID.—BILL OF LADING—LIMITATION OF LIABILITY.—A provision in the bill of lading that the goods "when received from or delivered on private or other sidings shall be at owner's risk until the cars are attached to and after they are detached from trains," does not relieve the carrier from liability, in view of a further provision that "property destined to or taken from a station at which there is no regularly appointed agent shall be entirely at the risk of the owner when unloaded from cars or until loaded into cars, and when received from or delivered on private or other sidings shall be at the owner's risk until the cars are attached to and after they are detached from trains."

ID.—CONSTRUCTION OF BILL OF LADING AGAINST CARRIER.—Stipulations in bills of lading are most strongly construed against the carrier.

ID.—NOTICE OF CLAIM FOR LOSS OF GOODS—TIME FOR FILING.—The time for filing claims against a carrier for loss of goods is not one of the matters assented to by the consignee without his signature, under section 2176 of the Civil Code, and if notice is given within a reasonable time the law is satisfied.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

E. W. Camp, H. D. Pillsbury, Chas. L. Brown, Platt Kent, and Pillsbury, Madison & Sutro, for Appellant.

Albert H. Elliot, and Clarence E. Todd, for Respondent.

MURPHEY, J., *pro tem.*—This is an appeal from the final judgment in favor of the respondent and from an order denying appellant's motion for a new trial.

The action was brought to recover damages accruing because of injury by fire to certain goods while said goods were yet in a freight car belonging to appellant. The plaintiff is the assignee of certain insurance companies that li-

quidated the claim for damages made by the George H. Tay Company, the consignee of the goods. This merchandise came into the possession of the appellant as a common carrier at Denver, Colorado, having been shipped to that point from Trenton, New Jersey, over the Pennsylvania Railroad, which latter railroad issued a bill of lading, signed by its agent, but not signed by the shipper or consignee or any person in their behalf. The goods arrived in San Francisco on the morning of August 8, 1908, and the consignee was notified that the car would be set on the siding next to its warehouse in the due course of business. The car was actually placed on the siding without notice to the consignee some time after 5 o'clock and after office hours on the afternoon of the date above named. Notwithstanding it was the custom of the switching crew of the appellant to ask for and receive instructions as to the placing of freight cars consigned to the George H. Tay Co., in this particular instance the car was spotted on the siding without instructions having been asked or received from any one. The said siding was on a public street of the city, and was the property of appellant, and was used by it for delivering freight to several business houses stationed along its course. About two hours after the car was left in front of the warehouse—which at the time of the leaving was closed for the day—it was discovered to be on fire, and the contents were damaged in the sum of $1143.29, for which plaintiff had judgment. The car inspector of the defendant was present at the fire, and the defendant was subsequently notified of the loss, and requested to adjust the same.

It seems to be a settled law that a contract of carriage made in one state where delivery is to be had in another is to be governed, so far as the delivery is concerned, by the laws of the latter state.

In the case of *Pope* v. *Nickerson,* 3 Story, 465, [Fed. Cas. No. 11,274], it was held that "The goods here were delivered in Philadelphia, and what would be an effectual delivery there in the sense of the law (which is sometimes a nice question) would be unquestionably settled by the laws of Pennsylvania."

In the case of *Southern Express Co.* v. *Gibbs,* 155 Ala. 303, [130 Am. St. Rep. 24, 18 L. R. A. (N. S.) 874, 46 South. 465],

it was held that a contract as to its nature, obligation, and validity, is governed by the law of the state where made unless it is to be performed in another state, in which case it will be governed by the laws of the place of performance.

In *Hughes* v. *Penn R. R.*, 202 Pa. St. 222, [97 Am. St. Rep. 713, 63 L. R. A. 513, 51 Atl. 990], it was held that if a contract, containing a stipulation limiting liability for negligence by a common carrier, is made in one state but with a view to its performance by transportation through or into one or more other states, it must be construed in accordance with the law of the state where its negligent breach causing injury occurs. Such contract, though valid in the state where made, must be declared void in the state where the injury occurs if contrary to the policy of the laws of the latter state.

The Civil Code of this state provides (sec. 2194) : ''Liability of inland carriers for loss.—Unless the consignor accompanies the freight and retains exclusive control thereof, an inland common carrier of property is liable, from the time that he accepts until he relieves himself of liability pursuant to sections twenty-one hundred and eighteen to twenty-one hundred and twenty-two, for the loss or injury thereof from any cause whatever, except''—then follow three or four subdivisions of exceptions having no bearing whatever upon the case at bar.

The trial court found that there had been no delivery of the goods to the consignee at the time of the fire, and that the common carrier's responsibility at that time was in full force and effect; and we are disposed to hold from what has been said above that the appellant was liable for the goods as an insurer until such time as it relieved itself from responsibility by delivering the same to the consignee in the manner and mode required by law; and in this connection we quote section 2118 of the Civil Code as follows: ''A carrier of property must deliver it to the consignee, at the place to which it is addressed, in the manner usual at that place.'' It is in evidence that it was the custom of the appellant's switching crew to ask the George H. Tay Company for instructions as to the placing of cars, but on the occasion of the present shipment no such instructions were asked and none were given. On the contrary the switching

crew placed the car on the siding in front of the warehouse of the consignee after 5 o'clock Saturday afternoon at a time when the place of business of the consignee was closed. It is not contended that the consignee had any notice of the delivery other than such as was conveyed by a telephonic message and a postal card sent on the morning of the arrival of the goods and stating that the car would be delivered in the usual course of business. This at most was a notice of intention to make delivery in the future, and should have been followed by some actual notice of delivery within business hours. Under this state of the facts we are disposed to agree with the conclusion of the trial court that there was not such a delivery of the goods as would relieve the appellant of its responsibility as a common carrier.

In the case of *Reeder* v. *Wells, Fargo & Co.*, 14 Cal. App. 790, [113 Pac. 342], the court says: "The statute contemplates undoubtedly that before the carrier shall be permitted to change the extent of its liability to the consignee to that of warehouseman the consignee shall actually have notice of the arrival of the goods. Where the mails are permitted to be resorted to for the purpose of giving such notice, then surely before a change is worked in the responsibility of the carrier a reasonable time must elapse after depositing in the mails of the notice before the consignee shall be charged with the effect thereof."

An illuminating case bearing upon a state of facts strikingly similar to the case at bar is to be found in *Missouri Pac. R. R. Co.* v. *Wichita Wholesale Grocery Co.*, 55 Kan. 525, [40 Pac. 899]. In that case two carloads of sugar were placed on the consignee's siding on Sunday and were burned before business on the following Monday. The court said: "Did the defendant deliver the sugar to the plaintiff? It is earnestly insisted that when the railroad company placed the cars at the rear of plaintiff's warehouse at the exact place where the plaintiff was accustomed to receive and unload its freight, it had already performed its whole duty, and from the time it uncoupled its engine from the cars the property was in the possession of the plaintiff and at its risk. It is shown that the plaintiff was accustomed to break the seals of cars so placed, and remove the freight without the presence of, or special permission from, any employee

of the railroad company. And it is claimed that under those circumstances the defendant had fully performed all the services which it undertook to perform, and was discharged from all further liability. There are authorities which give some support to this contention. . . . We think, however, that the facts of this case fail to show a delivery of the sugar to the plaintiff. It is true that the cars were placed in the proper position for unloading, and that the plaintiff was privileged to proceed to take out the sugar as soon as it pleased to do so. But the cars were so placed on Sunday. They were consumed by fire before business hours on Monday morning. The plaintiff was under no obligation to work on Sunday, nor was it bound to receive goods in the night time, especially as it is not shown that it was accustomed to do so. The property remained in the custody of the railroad company until the plaintiff could reasonably be required to receive it.''

Appellant contends that by reason of the following provision in the bill of lading it was relieved from liability: ''And when received from or delivered on private or other sidings shall be at owner's risk until the cars are attached to and after they are detached from trains.'' Giving the words ''delivered on'' the construction contended for by appellant, this language standing alone and disconnected from the context of which it forms a part, would compel a conclusion favorable to appellant. However, the entire sentence reads: ''Property destined to or taken from a station at which there is no regularly appointed agent shall be entirely at the risk of the owner when unloaded from cars or until loaded into cars, and when received from or delivered on private or other sidings shall be at the owner's risk until the cars are attached to and after they are detached from trains.''

In view of the rule that stipulations in contracts of the character under discussion are to be most strongly construed against the carrier (*Hooper* v. *Wells Fargo,* 27 Cal. 11, [85 Am. Dec. 211] ; *Pierce* v. *Southern Pacific Co.,* 120 Cal. 156, [40 L. R. A. 350, 47 Pac. 874, 52 Pac. 302]), we are strongly disposed to agree with respondent's construction of the language, to the effect that it refers only to deliveries of goods at stations ''where there is no regularly appointed

agent." However, according to our interpretation of the law, no different conclusion would result from the adoption of appellant's construction, its contention being that the word "delivered" must be construed as being used in the sense of placed, and that the latter part of the sentence is independent and complete in itself. Even if that were true, it would be a harsh and unjust construction that would not require the "placing" or "delivery" to be made within working hours and on reasonable notice to the consignee of the fact of such delivery.

We are disposed to think that the claim of appellant that the filing of a written claim within thirty days as a condition precedent to a recovery against the carrier is without merit. Section 2176 of the Civil Code in connection with the conduct of the parties as the same was found by the trial court, we regard as controlling on this phase of the case. Section 2176 of the Civil Code reads as follows: "A passenger, consignor, or consignee, by accepting a ticket, bill of lading, or written contract for carriage, with a knowledge of its terms, assents to the rate of hire, the time, place, and manner of delivery therein stated; and also to the limitation stated therein upon the amount of the carrier's liability in case property carried in packages, trunks, or boxes, is lost or injured, when the value of such property is not named; and also to the limitation stated therein to the carriers liability for loss or injury to live animals carried. But his assent to any other modification of the carrier's obligations contained in such instrument can be manifested only by his signature to the same."

It will be observed that the question as to the time of filing claims is not one of the matters assented to by the consignee, consignor, or passenger without his signature. The bill of lading in this case was signed neither by the shipper nor by the consignee; and with respect to the conduct of the parties the court found as follows: "That the defendant was informed of the loss or damage to the said goods within a reasonable time after said loss, and that the defendant knew of said loss and damage, and inspected the car in which said goods were lost and damaged immediately after the said fire."

It is finally contended by the appellant as a reason for the reversal of the judgment, that it is not liable by reason of the following provision found in a contract of agreement entered into between appellant Atchison, Topeka & Santa Fe Railway Company and the George H. Tay Co., the consignee:

"6. That the first party shall not be held liable for or on account of any loss or damage by fire to the property, buildings or structures, or property therein located, upon any land owned, leased or controlled by the second party (including the said plant and its contents), whether belonging to the second party or permitted by the second party to be or remain upon said land or any part thereof, or in any building or structure situated thereon, from whatever cause arising, it being understood that all risk of such loss or damage shall be and is hereby assumed by the second party, and that neither the second party nor any one claiming through or under the second party shall make any demand against the first party for or on account of any such loss or damage from any cause whatever."

The trial court concluded, and incorporated its conclusions in its findings of fact herein, that the provisions of this agreement have no application to the property described in the complaint. By its express terms the agreement excludes from liability on account of loss or damage by fire "property, buildings or other structures or property therein located upon any land under lease or controlled" by the party of the second part. It is conceded that the goods burned were consigned to the George H. Tay Co. and were at the time of the fire in a car belonging to the appellant, which car was standing on a public street and at a siding used for serving the George H. Tay Co. and other industries, and that the car was near the property of the George H. Tay Co.

Clearly this does not bring the burned property within the express provisions of the agreement; and we are entirely satisfied from a mere reading of the paragraph above set out that it must be manifest that it was not within the contemplation of the parties that property yet remaining in the possession of the railroad corporation, as was the property here in question, should be included in property exempt from loss by fire. The corporation was unquestionably protecting itself from loss by fire likely to result from the operation of

its engines on the siding adjacent to the plant of the party of the second part; and that it should be applied to a contingency such as is here developed did not, we apprehend, remotely suggest itself to either of the parties at the time this agreement was entered into.

From an inspection of the entire record we are satisfied that the judgment of the trial court was correct and should be affirmed, and it is so ordered.

Lennon, P. J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May. 3, 1913.